<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
JUAN JOSE JORGE NIVAR,        :
                       : Civil Action No. 10-825 (FLW)
        Petitioner,    :
                       :
        v.                 : **O P I N I O N**
                       :
SCOTT WEBER, et al.,       :
                       :
        Respondents.   :
_____:

**APPEARANCES:**

        JUAN JOSE JORGE NIVAR, Petitioner, <u>Pro</u> <u>Se</u>
        A# 055-120-013
        Monmouth County Correctional Institution
        One Waterworks Road
        Freehold, New Jersey 07728

**WOLFSON, District Judge**

    Petitioner, Juan Jose Jorge Nivar ("Nivar"), is currently being detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Monmouth County Correctional Institution in Freehold, New Jersey, pending his removal from the United States.[1]  On or about February 17, 2010, Nivar filed this Petition for Writ of Habeas Corpus under

_____

    [1]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  <u>See</u> Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

28 U.S.C. § 2241, in which he challenges his mandatory detention pending removal proceedings as unconstitutional.  Nivar brings this action against Scott Weber, Director for Detention; John P. Torres, Assistant Secretary of the ICE; Janet Napolitano, Secretary of the DHS; Eric Holder, United States Attorney General; John Tsoukaris, Field Office Director of New York District; and William Fraser, Warden of the Monmouth County Jail, as the named party respondents (hereinafter referred to as "the Government") in this action.  For the reasons stated below, this petition for habeas relief is subject to summary dismissal because mandatory detention pending completion of removal proceedings has been held constitutionally permissible.[2]  See Demore v. Kim, 538 U.S. 510 (2003).

## I.  BACKGROUND

Nivar is a native and citizen of the Dominican Republic, who was admitted into the United States as lawful permanent resident in December 2001.  (Petition, ¶¶ 14, 15).  He admits that he was convicted on November 14, 2007, for the criminal sale of marijuana, to which he was sentenced to 24 hours time served. Nivar also was convicted on a prior offense for possession of marijuana.  He was confined at the Rikers Island correctional facility in New York, when the ICE visited him and told Nivar

---

[2]  Nivar seeks to bring this matter as a class action. However, because his habeas petition must be dismissed, his application for class status is rendered moot.

that he would be subject to removal proceedings.  (Pet., ¶¶16, 17).

A Notice to Appear for removal proceedings was issued on August 7, 2009.  The Notice charged that Nivar is subject to removal from the United States pursuant to (1) Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), based on his conviction for an aggravated felony as defined in Section 101(a)(43)(B) of the INA, namely, an offense relating to the illicit trafficking in a controlled substance; and (2) Section 237(a)(2)(B)(i) of the INA based on his conviction for a drug related offense other than a single offense involving possession for one's own use of 30 grams or less of marijuana. (Pet., Exhibit A, Notice to Appear form).

Nivar states that he has been detained for more than six months while his removal proceedings are ongoing.  He has applied for a Cancellation of Removal.  Nivar claims that he poses no flight risk or danger to the community.  He further states that he has no violent criminal history and shows evidence of rehabilitation.  If released, he intends to live with his wife in Brooklyn, New York.  Nivar also alleges that he has not received a custody hearing to determine whether his continued detention is justified.  (Pet., ¶¶ 19 -21).

II. <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

Nivar seeks a writ of habeas corpus pursuant to 28 U.S.C. §
2241(c)(3).  That section states that the writ will not be
extended to a prisoner unless "he is in custody in violation of
the Constitution or laws or treaties of the United States."  28
U.S.C. § 2241(c)(3).  Under 28 U.S.C. § 2243, "[a] court ...
entertaining an application for a writ of habeas corpus shall
forthwith award the writ or issue an order directing the
respondent to show cause why the writ should not be granted,
unless it appears from the application that the applicant or
person detained is not entitled thereto."

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>,
429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520
(1972).  A pro se habeas petition and any supporting submissions
must be construed liberally and with a measure of tolerance.  <u>See</u>
<u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v.</u>
<u>Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United</u>
<u>States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert.</u>
<u>denied</u>, 399 U.S. 912 (1970).

B.   Jurisdiction to Grant Habeas Relief

As stated earlier, Nivar brings this habeas action under 28 U.S.C. § 2241(c)(3), which requires that the petitioner show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Court has subject matter jurisdiction over this petition because Nivar is being detained within its jurisdiction at the time he filed his petition, and because Nivar asserts that his continued detention is not statutorily authorized and is constitutionally impermissible because it violates due process under the Fifth Amendment.

C.   Relevant Statutory and Case Law Authority

Nivar admits that he is being held pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the INA.  This statute provides for the mandatory detention, without bond while removal proceedings are pending, of those aliens who committed certain enumerated categories of criminal and other offenses.

Specifically, Title 8 of the United States Code, Section 1226 states:

§ 1226. Apprehension and detention of aliens
(a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be ... detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
     (1) may continue to detain the arrested alien;
     [or] may release the alien on-

      (A) bond of at least $1,500 with security approved by,
and containing conditions prescribed by, the Attorney
General; or
      (B) conditional parole....
   (c) Detention of criminal aliens.
      (1) Custody. The Attorney General shall take into
custody any alien who ...
      (A) is inadmissible by reason of having committed any
offense covered in section 1182(a)(2) of this title,
      (B) is deportable by reason of having committed any
offense covered in section 1227(a)(2)(A)(ii), (A)(iii),
(B), (C) or (D) of this title,
      (C) is deportable under section 1227(a)(2)(A)(i) of
this title on the basis of an offense for which the
alien has been sentenced to a term of imprisonment of
at least 1 year, or
      (D) is inadmissible under section 1182(a)(3)(B) of this
title or deportable under section 1227(a)(4)(B) of this
title,

      when the alien is released, without regard to whether
the alien is released on parole, supervised release, or
probation, and without regard to whether the alien may
be arrested or imprisoned again for the same offense.

      (2) Release. The Attorney General may release an alien
described in paragraph (1) only if the Attorney General
decides pursuant to section 3521 of Title 18 that
release of the alien from custody is necessary to
provide protection to a witness, a potential witness, a
person cooperating with an investigation into major
criminal activity, or an immediate family member or
close associate of a witness, potential witness, or
person cooperating with such an investigation, and the
alien satisfies the Attorney General that the alien
will not pose a danger to the safety of other persons
or of property and is likely to appear for any
scheduled proceeding.  A decision relating to such
release shall take place in accordance with a procedure
that considers the severity of the offense committed by
the alien.

8 U.S.C. § 1226.

    In other words, detention under § 1226(a) is discretionary

and requires individualized bond hearings, while detention under

§ 1226(c) is mandatory and does not provide for any bond hearing. Both provisions apply to "pre-removal-order detainees," that is, to those aliens who are in the midst of their removal proceedings and thus whose removal orders have not become "final."

Section 1226(a) provides the Attorney General (or the DHS)[3] with the discretionary authority to release an alien on bond or conditional parole pending completion of removal proceedings. Under § 1226(a), an alien may be released where he can show, to the satisfaction of the DHS/ICE, that he is not a flight risk or a danger to the community.  8 C.F.R. § 236.1(c)(8).  A similar standard applies before the Immigration Judges and BIA.  See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

Under the mandatory detention statute, however, immigration courts are without jurisdiction to redetermine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond.  8 C.F.R. § 1003.19(h)(2)(i)(D)(2008).  An alien may request a Joseph hearing before an immigration judge to determine if the alien is properly included in the mandatory custody provision, pursuant to Matter

---

[3]  Pursuant to the Homeland Security Act of 2002, all immigration functions vested in the Attorney general, with a few exceptions, were transferred to the Secretary of the DHS.  The Attorney General has delegated his discretionary custody redetermination authority to the Immigration Judges and the BIA.  See Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006).

of Jospeh, 22 I.& N. Dec. 299 (BIA 1999) and 8 C.F.R. §
1003.19(h)(2)(ii).

Once the removal order becomes "final," the alien's "removal
period" begins to run.  Specifically, the "removal period" starts
on the latest of the following (1) the date when the order of
removal issued by an Immigration Judge ("IJ") becomes
administratively final (that is, appeal to BIA was either taken
and ruled upon in the sense that the appeal was denied, or the
time to file such appeal simply expired); or (2) if the removal
order is judicially reviewed and if a court orders a stay of the
removal, the date of the court's final order, or (3) if the alien
is detained or confined (except under an immigration process),
the date when the alien is released from confinement.  See 8
U.S.C. § 1231(a)(1)(B).

Under Section 1231(a)(1)(A), the government has a 90-day
"removal period" to remove an alien.  Detention during this 90-
day removal period is mandatory.  Section 1231(a)(1)(c), however,
provides that this 90-day removal period may be extended, and the
alien may remain in detention during such extended period, if the
alien "acts to prevent the alien's removal subject to an order of
removal."  8 U.S.C. § 1231(a)(1)(c).

Moreover, even after the 90-day "removal period," the
government may further detain the alien under 8 U.S.C. §
1231(a)(6).  However, the Supreme Court has held that aliens may

be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689 (2001). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." <u>Id</u>. at 700-01. However, after establishing this "presumptively reasonable period of detention," the Supreme Court stressed that

> after this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Moreover, no language in <u>Zadvydas</u> excluded or limited the operation of the tolling-like function enunciated in 8 U.S.C. § 1231(a)(1)(c). Consequently, an alien who, during his presumptive six-month <u>Zadvydas</u>-based period, takes actions delaying his removal, cannot demand his release upon expiration of these six months. <u>See</u>, <u>e.g.</u>, <u>Wang v. Carbone</u>, No. 05-2386 (JAP), 2005 WL 2656677 (D.N.J. Oct. 17, 2005)(calculating the

presumptive period excluding the period of non-cooperation and relying on <u>Riley v. Greene</u>, 149 F. Supp.2d 1256, 1262 (D. Colo. 2001) and <u>Sango-Dema v. District Director</u>, 122 F. Supp.2d 213, 221 (D.Mass. 2000)). Rather, the period affected by the alien's actions is excluded from the six-month presumptive period articulated in <u>Zadvydas</u>, causing a quasi-tolling.

Thus, "<u>Zadvydas</u> does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." <u>Pelich v. INS</u>, 329 F.3d 1057, 1060 (9th Cir.2003).

D.   <u>The Issue of Mandatory Detention</u>

Nivar asserts that his mandatory detention under § 1226(c) violates due process because it is an unreasonably prolonged detention. He seeks a bond hearing to be released under supervision while his removal proceedings are ongoing.

The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. <u>See</u> 8 U.S.C. § 1226(c)(2).[4] Further, an alien detained under § 1226(c)

---

[4]   Section 1226(c)(2) reads: The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness,

is not afforded a bond hearing before an IJ, whereas a
noncriminal alien, who is detained under § 1226(a), is given such
a hearing.  See 8 U.S.C. § 1226(a), (c).  Consequently, Nivar, as
an alien detained under § 1226(c), does not have an opportunity
to show that he does not pose a danger to the community or a
flight risk to be released on bond.  See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538
U.S. 510 (2003), that mandatory detention under 8 U.S.C. §
1226(c) during removal proceedings does not violate the
protections guaranteed under the Constitution.  In Demore, a
lawful permanent resident filed a habeas petition challenging the
no-bail provision of § 1226(c), pursuant to which he had been
held for six months during the pendency of removal proceedings
against him.  The Supreme Court held that detention of lawful
permanent residents during removal proceedings is
constitutionally permissible, even when there has been no finding
that they are unlikely to appear for their deportation
proceedings.  Id. at 523-24.  In doing so, the Court noted that
detention pending removal "serves the purpose of preventing
deportable criminal aliens from fleeing prior to or during their

---

or person cooperating with such an investigation, and the alien
satisfies the Attorney General that the alien will not pose a
danger to the safety of other persons or of property and is
likely to appear for any scheduled proceeding.  A decision
relating to such release shall take place in accordance with a
procedure that considers the severity of the offense committed by
the alien.

removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

However, the Supreme Court's holding in Demore, as noted in Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "narrow[ ] ... grounded in repeated reference" to the brevity of removal proceedings. Id. at 664. In Demore, the Supreme Court recognized that § 1226(c) was intended only to "govern [ ] detention of deportable criminal aliens pending their removal proceedings," which the Court stressed typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Demore, 538 U.S. at 527-28 (emphasis in original).

D.   Petitioner Is Not Entitled to Release from Detention

Nivar challenges his mandatory detention under 8 U.S.C. § 1226(c) on the ground that it violates his rights to substantive and procedural due process. The petition plainly states on its face that Nivar's removal proceedings are not yet final.

This Court concludes that the United States Supreme Court's holding in Demore v. Kim, 538 U.S. 510 (2003) forecloses Nivar's constitutional challenge to his continued mandatory detention.

The custodial status of aliens who have committed crimes is governed by 8 U.S.C. § 1226 (INA § 236). Section 1226(a) gives

12

the Attorney General discretion to arrest and detain an alien pending removal proceedings and to release the alien on bond. Section 1226(b) gives the Attorney General discretion to revoke a bond or parole under § 1226(a).  By contrast, however, § 1226(c) requires that aliens with certain enumerated criminal convictions be detained pending removal proceedings.  In particular, § 1226(c) provides for the detention of criminal aliens who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]."  8 U.S.C. § 1226(c)(1)(B).

Here, Nivar admits in his petition that his detention is governed by 8 U.S.C. § 1226(c)(1)(B), as a deportable alien convicted of an aggravated felony whose removal proceedings are not yet final.[5]  As stated in the previous section of this Opinion, the Supreme Court has held that the detention of an alien pursuant to the no-bail provision under § 1226(c) does not

---

[5]   Under 8 U.S.C. § 1231, the government may detain an alien subject to a final order of removal.  Section 1231(a)(6) provides, in pertinent part:

> An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ... ."

13

violate due process under the Fifth Amendment.  <u>DeMore</u>, <u>supra</u>.
The Supreme Court reaffirmed its "longstanding view that the
Government may constitutionally detain deportable aliens during
the limited period necessary for their removal proceedings."
<u>Id</u>., 538 U.S. at 526.  The Court concluded that the mandatory
detention provision under § 1226(c) furthered the government's
legitimate purpose of preventing aliens from fleeing before the
removal proceedings are completed,[6] and that such detention would
be limited to a finite period of time generally needed for
completion of removal proceedings.  <u>Id</u>. at 529-531.

The Supreme Court, however, did not set a temporal time
limit on the detention of an alien pending removal proceedings,
acknowledging that detention under § 1226(c) was typically short
in duration.  <u>Id</u>. at 527-28 (distinguishing its decision in
<u>Zadvydas</u> with respect to detention under § 1231, by emphasizing
that detention under § 1226(c) had an obvious termination point
and that such confinement was generally brief).  <u>See</u> <u>also</u> <u>Contant</u>
<u>v. Holder</u>, 352 Fed. Appx. 692, 694 (3d Cir. 2009)(where a pre-
removal-order petitioner is being detained pending a decision on
whether he is to be removed from the United States, there is no

---

[6]  The Court also acknowledged that "in adopting § 1226(c),
Congress had before it evidence suggesting that permitting
discretionary release of aliens pending their removal hearings
would lead to large numbers of deportable criminal aliens
skipping their hearings and remaining at large in the United
States unlawfully."  <u>Kim</u>, 538 U.S. at 528.

indication that petitioner cannot be deported to his country of origin following an unfavorable removability decision).

Moreover, while there may be legitimate concerns that due process necessitates an individualized custody evaluation for aliens who have been in detention pending lengthy removal proceedings, the Government is not obligated under the Due Process Clause "to employ the least burdensome means to accomplish its goal" in "dealing with deportable aliens." Demore, 538 U.S. at 528.

In this case, there is no indication that Nivar has been detained for a lengthy period of time, or that his removal proceedings are substantially delayed. In fact, Nivar states that he has been in detention for six months, the same length of time at issue in Demore v. Kim. He does not allege any inordinate delays by the DHS/ICE, and admits that he is challenging his removal. Nivar also does not indicate whether his removal proceedings are still pending before the IJ or whether it is before the Board of Immigration Appeals, which would account for the length of time for the completion of the removal proceedings. Thus, since February 2010 when Nivar filed his habeas petition, Nivar has not informed the Court as to the status of his removal proceedings, and it may be that a final order of removal has since been entered.

Accordingly, this Court finds that Nivar has failed to state any violation of federal statutory or constitutional law respecting his mandatory detention pending removal proceedings. Therefore, his petition seeking release from detention must be dismissed at this time.[7]

That leaves only the issue of bond hearings, which are inapplicable to aliens like Nivar, detained under Section 1226(c). The Supreme Court observed in Demore v. Kim that the fact of the prolonged detention does not entitle an alien to individualized bond hearings if the alien "himself had requested a continuance of his removal hearing." Id. at 530. Consequently, Nivar's request for a bond hearing as provided under § 1226(a) is without merit and will be denied at this time.

E. Case Law Relied Upon by Petitioner

The Court's discussion would not be complete if the Court overlooked the immigration cases invoked by Nivar. First, Nivar's reliance on Zadvydas and Ngo v. INS, 192 F.3d 390 (3d

---

[7] The petition will be dismissed without prejudice to Nivar renewing his application. The Court is aware that Nivar's detention period may be approaching one year. However, as stated above, Nivar has not informed the Court during this time as to whether his removal proceedings remain ongoing, whether he is now subject to a final order of removal, which would change the statute governing his detention, (see Section II.C. of this Opinion, supra), or whether he is appealing entry of a removal order by an immigration judge before the BIA. Thus, to the extent that Nivar can show inordinate delays by the Government that has perpetuated his detention, which is not evident from the instant petition, Nivar may file a new application for habeas relief under § 2241.

16

Cir. 1999) for a bond hearing allowing his release under supervision is misplaced because these cases involved individuals who had final orders of removal but whose removal could not be effectuated.  Here, as stated above, Nivar is a pre-removal order alien subject to the mandatory detention provision under § 1226(c).  Thus, there is no indication that petitioner cannot be deported to his country of origin following entry of a final removal order.  See Demore v. Kim, 538 U.S. at 528; Contant, 352 Fed. Appx. at 694.  Moreover, Nivar has failed to demonstrate that his detention has been unreasonably prolonged by the Government to justify a bond hearing.

Nivar also cites the following case law, which held that prolonged mandatory detention under § 1226(c) raises serious constitutional problems: Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005); Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942, 948 (9th Cir. 2008); Ly v. Hansen, 351 F.3d 263, 271-72 (6th Cir. 2003); Welch v. Ashcroft, 293 F.3d 213, 224 (4th Cir. 2002)(pre-Demore v. Kim); Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007).  However, Nivar declines to refer to the Third Circuit's ruling in Contant, which held that an alien's lengthy pre-removal order detention was not indefinite, and thus, not in violation of due process.  Indeed, Nivar does not face permanent detention like the aliens in Zadvydas and Ly.  Much to the contrary, Nivar does not allege that he cannot obtain his

release to the Dominican Republic at any time, and therefore, he
does not face the prospect of indefinite detention.

Moreover, in all of the cases cited by Nivar, the
petitioners had been detained for a period of time significantly
longer than Nivar in this instance.  See Tijani, 430 F.3d 1241
(two years and eight months); Casas-Castrillon, 535 F.3d 942
(seven years); Ly, 351 F.3d 263 (eighteen months); and Hussain v.
Mukasey, 510 F.3d 739(about two years).  None of these cases are
binding on this Court, and this Court, respectfully, does not
find them persuasive in any event.  In fact, in Casas-Castrillon,
the Ninth Circuit held that the alien's detention ceased under
§ 1226(c) when the BIA dismissed the appeal and shifted to
§ 1226(a), which gives the Attorney General authority to release
him.  Casas-Castrillon, 535 F.3d at 947-48.  This Court finds
such ruling to be contrary to Congress' intent because it
"funnels deportable criminal aliens to § 1226(a), a portion of
the statute which Congress never intended to apply to such
aliens, and requires the Attorney General to exercise the very
discretion over release of criminal aliens which Congress
intended to restrict."  Alli v. Decker, 644 F. Supp.2d 535, 542
(M.D.Pa. 2009).  See also Aponte v. Holder, 2010 WL 3547707, *10,
fn 12 (W.D.N.Y. Sept. 10, 2010).

Finally, Nivar relies on several decisions in the Middle
District of Pennsylvania for the proposition that he is entitled

to a bond hearing.  See Madrane v. Hogan, 520 F. Supp.2d 654
(M.D.Pa. 2007)(two years in mandatory detention); Nunez-Pimental
v. U.S. Dep't of Homeland Security Immigration Customs
Enforcement, 2008 WL 2593806 (M.D.Pa June 27, 2008)(more than
three years in custody); Wilks v. U.S. Dep't of Homeland
Security, 2008 WL 4820654 (M.D.Pa. Nov. 3, 2008)(two and a half
years in detention); and Victor v. Mukasey, 2008 WL 5061810
(M.D.Pa. Nov. 25, 2008)(about 18 months in detention).  Again,
all of these cases demonstrate a significant period of time in
detention, far longer than alleged by Nivar here.  Moreover, in
Victor, the district court noted that the government was
appealing the IJ's decision to the BIA, not the petitioner; thus,
Victor was not delaying entry of a final removal order.  Victor,
2008 WL 5061810 at *5; see also Akinola v. Weber, 2010 WL 376603
(D.N.J. Jan. 26, 2010)(district court ordered a bond hearing
because multiple postponements of Akinola's removal proceedings-
some lasting three months- were consistently requested by the
Government, and then upon entry of the IJ order granting Akinola
a deferral of removal, the Government placed Akinola in
procedural limbo by appealing the IJ's decision to the BIA and
continuing the postponement practice while keeping Akinola in
detention).

    In sum, this Court does not find any basis in the instant
case to depart from the express requirement of mandatory

detention under § 1226(c), as upheld in <u>Demore v. Kim</u>, and by the Third Circuit in <u>Contant v. Holder</u>.  Therefore, Nivar's application for habeas relief from mandatory detention and his request for a bond hearing are dismissed without prejudice to his bringing a new action should he be able to demonstrate circumstances of indefinite detention and inordinate delays perpetuated by the Government.

III. <u>CONCLUSION</u>

Based upon the foregoing, the habeas petition seeking petitioner's release from detention pursuant to a bond hearing pending a final order of removal is dismissed without prejudice. Further, the application for class status is denied as moot.  An appropriate Order accompanies this Opinion.


 s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: October 13, 2010

20